**UNITED STATES of America,
Defendant-Appellant,

v.

Robert RIDOLFI, Plaintiff-Appellee.

No. 297, Docket 27958.**

United States Court of Appeals
Second Circuit.

Argued March 28, 1963.

Decided June 14, 1963.

Edward A. Groobert, Alan S. Rosenthal, Attys., Dept. of Justice, Washington, D. C. (John W. Douglas, Acting Asst. Atty. Gen., Washington, D. C., and Joseph P. Hoey, U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellant.

Jerome D. Silberstein, New York City (David Schack and Joseph Atkinson, New York City, on the brief), for plaintiff-appellee.

Before WATERMAN and KAUFMAN, Circuit Judges, and BRYAN, District Judge.

FREDERICK van PELT BRYAN, District Judge.

The United States appeals from a judgment entered against it in an action under the Federal Tort Claims Act[1] in the United States District Court for the Eastern District of New York. Plaintiff Ridolfi sued for personal injuries sustained while he was a patient in the Veterans Administration Hospital at Northport, Long Island, as a result of alleged negligence. The case was tried

1. 28 U.S.C. §§ 1346(b), 2401(b) and 2674.

to the court withut a jury. The court found for the plaintiff and awarded damages of $3,570. Judgment was entered accordingly.

Both parties accept the findings of fact made by the trial court. The only question on appeal is whether, as a matter of law, the United States may be held liable upon such findings.

We hold that, upon the findings of fact below, the United States was not liable to plaintiff and that the District Court erred in holding that it was.

The pertinent facts bearing on the question of liability, as found by the court below, are as follows:

Ridolfi was admitted to the Northport Hospital on January 29, 1958 as a voluntary patient for the treatment of acute alcoholism. On admission he was interviewed by two doctors and sent to Ward 11, the security ward. Twenty-four hours hydrotherapy (wrapping the patient in wet sheets) was authorized in the event he became violent but apparently it did not become necessary to administer this treatment. Ridolfi spent an uneventful first day and night in Ward 11. He evidenced no excitement or observable disturbance during this period and was not given any medication or treatment.

On the following morning, January 30, at about 6:45 a. m., Ridolfi sustained a fracture of the left humerus "while properly in the corridor of Ward 11 on the way to or at the drinking water fountain, when, for the first time during his life, he suffered an unanticipatable and unanticipated Grand-Mal seizure in the course of which he bit his tongue; the seizure was followed by a period of confusion on plaintiff's part; plaintiff has no genuine, ordered recollection of the occurrence or the immediately succeeding events; the manner in which, and the point, during the course of the seizure and return to full unconfused consciousness, at which the injury occurred are unknown to plaintiff and unexplained by defendant." [2]

"Defendant could not have foreseen that plaintiff would have a seizure of the kind that he had nor could defendant have observed the onset of the seizure. Plaintiff had no history of such seizure."

A nurse's aid went to Ridolfi's assistance when he fell and other attendants observed him sitting on the floor of the corridor with legs outstretched, his back to the wall and his eyes open. When a nurse arrived Ridolfi complained of no pain except to his tongue, said he was all right and sat up. The nurse noted no other injury.

About half an hour later Ridolfi was visited by a doctor who found that he was "manifesting terrific agitation and restlessness," and that he complained of pain in his left arm and back. Subsequent examination and X-rays disclosed the fracture for which he brought this action.

The court below found as a fact that the circumstances of the injury as shown by the evidence did "not support or permit an inference of fact, based on preponderance of factual probability, that plaintiff's injury was caused by an act or omission on defendant's part that constituted negligence or other wrong; the circumstances are too incompletely evidenced to indicate the precise injury producing physical event; if no other evidence were producible, the possibility that defendant's negligence produced the injury, while not excluded, could not be a preponderant inference of fact."

It concluded that "the direct and circumstantial evidence, taken as a whole, does not establish negligence on defendant's part as a more probable inference than an inference of pure accident or of a battery"; [3] but that "such evidence is compatible with the existence of negligence on defendant's part as a possible cause of the injury to plaintiff."

The court nevertheless held that the doctrine of *res ipsa loquitur* was appli-

<hr />

2. Quotations are from the findings below unless otherwise indicated.

3. Such a battery would be non-actionable under 28 U.S.C. § 2680(h).

cable and that "Defendant was required, on the basis of the evidence as it was when plaintiff rested, to adduce evidence, to the extent available to it, fairly explanatory of the event that produced the injury to plaintiff * * *." It found that "no satisfactory explanation of the circumstances of the happening of the injury and the physical event that produced it was given by defendant;" and concluded that Ridolfi was therefore entitled to recover.

The alleged negligence took place in New York and the law of that State clearly applies. (28 U.S.C. § 1346(b).) The question here is whether under New York law the doctrine of *res ipsa loquitur* was applicable to the facts as found, and, if so, whether it was properly applied. This is the sole issue raised by the Government on this appeal.

Since the casual word of Baron Pollock fathered the concept in 1863[4] and it was more definitely stated by Chief Justice Erle in 1865,[5] the doctrine called *res ipsa loquitur* has been the source of much trouble and confusion in the courts.[6]

In New York, as elsewhere, the doctrine has had its vicissitudes although the basic concepts have been reasonably well settled by the landmark case of Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36 (1935), and the cases following and approving it. See, for example, Cole v. Swagler, 308 N.Y. 325, 125 N.E. 2d 592 (1955); Manley v. New York Telephone Company, 303 N.Y. 18, 100 N.E.2d 113 (1951); Neuhoff v. Retlaw Realty Corporation, 289 N.Y. 293, 45 N.E.2d 450 (1942); George Foltis, Inc. v. City of New York, 287 N.Y. 108, 38 N.E.2d 455, 153 A.L.R. 1122 (1941); and Mercatante v. City of New York, 286 A.D. 265, 142 N.Y.S.2d 473 (1st Dept. 1955). See also Citrola v. Eastern Air Lines, Inc., 264 F.2d 815 (2 Cir. 1959).

In the language of the Galbraith case, supra, "The doctrine of res ipsa loquitur is not an arbitrary rule. It is rather a common-sense appraisal of the probative value of circumstantial evidence." (267 N.Y. p. 234, 196 N.E. p. 38). As the New York Court of Appeals said there, the doctrine is not called into play unless there is evidence "which shows at least *probability* that a particular accident could not have occurred without legal wrong by the defendant." (267 N.Y. p. 234, 196 N.E. p. 38). (Emphasis added.)

*Res ipsa loquitur*, when applied, merely substitutes for proof of specific negligent conduct an inference of negligence arising out of the happening of the accident which, in itself, is sufficient to make out a *prima facie* case for the plaintiff. The burden of explanation then shifts to the defendant to come forward with evidence indicating that the accident was not due to its fault. But the ultimate burden of proof is not changed, for the plaintiff is still required, on the whole case, to convince the trier of the facts by a preponderance of the evidence that the accident was caused by the defendant's negligence. Moreover, "[i]f a satisfactory explanation is offered by the defendant, the plaintiff must rebut it by evidence of negligence or lose his case." Plumb v. Richmond Light & Railroad Company, 233 N.Y. 285, 288, 135 N.E. 504, 505, 25 A.L.R. 685 (1922). Thus, on the whole case there must be, in any event, a preponderance of evidence in plaintiff's favor showing negligence before the trier of the facts, be it court or jury, may find in plaintiff's favor. George Foltis, Inc. v. City of New York, supra; Plumb v. Richmond Light & Railroad Company, supra.

The doctrine has been applied to a wide variety of factual situations in-

---

4. Byrne v. Boadle, 2 H. & C. 722, 159 English Reports 299 (1863).

5. Scott v. London & St. Katherine Docks Co., 3 H. & C. 596 (1865).

6. See discussion in Prosser on Torts (2d ed. 1955) p. 201.

cluding the classic example of bricks or other materials falling from defendant's building, injuries to passengers from causes within control of a carrier, various kinds of automobile accidents, such as cars running into stationary objects, deleterious substances in food sold in sealed containers and claims of malpractice where foreign bodies have been found inside a patient after an operation.

In each case where *res ipsa loquitur* has been held to be applicable, however, a common factor exists—the reasonable *probability* that in the ordinary course of events the accident would not have occurred without defendant's negligence. The conditions under which the doctrine may be invoked are stated in Galbraith v. Busch, supra, 267 N.Y. p. 234, 196 N.E. p. 38, to be as follows:

"[W]here the instrumentality which produced an injury is within the exclusive possession and control of the person charged with negligence, and such person has exclusive knowledge of the care exercised in the control and management of that instrumentality, evidence of circumstances which show that the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff is sufficient to justify an inference of negligence and to shift the burden of explanation to the defendant."

The New York cases have consistently refused to apply the doctrine unless these conditions are shown to be present. See, e. g. Galbraith v. Busch, supra; Manley v. New York Telephone Company, supra; Yandrasitz v. Teddy's The House of Sea Food, Inc., 286 A.D. 146, 141 N.Y.S.2d 635 (1st Dept. 1955); Mercatante v. City of New York, supra; Nahay v. Ta-E-Yatos Realty Corporation, 36 Misc. 2d 1075, 234 N.Y.S.2d 90 (Sup.Ct., New York County, 1962).

In order to satisfy the first of these conditions "the plaintiff must establish first and foremost the nature of the instrumentality which is alleged to have caused the injury * * * and its

identity with the defendant, Paolantonio v. Long Island R. R. Co., 300 N.Y. 640, 90 N.E.2d 495; Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36." Manley v. New York Telephone Company, supra, 303 N.Y. p. 25, 100 N.E.2d p. 116.

Plaintiff failed to do this here. The only evidence as to how the injury occurred is that it happened during the course of plaintiff's Grand-Mal seizure which the trial court found defendant could not have foreseen. This, without more, wholly failed to establish what the instrumentality was which caused the injury or that it was in defendant's exclusive possession and control.

Moreover, there was no evidence of circumstances showing that the accident would not ordinarily have occurred without neglect of some duty owing to plaintiff.

The proof as to the circumstances of the accident was that Ridolfi sustained his injury while he was properly in the corridor of Ward 11 on the way to or at the drinking fountain when he suffered his seizure. There had been no previous history of such seizure and the trial court found the seizure to have been "unanticipated and unanticipatable."

It cannot reasonably be said that an injury otherwise entirely unexplained, occurring during an unanticipatable seizure of this nature, in the course of which there was a fall, would not ordinarily have occurred without neglect of some duty owing to the injured party. Indeed, these circumstances indicate that it was improbable that the injury would be caused by negligence or fault on the part of anyone.

Thus the evidence here did not show the existence of the conditions necessary to satisfy the basic requirement of *probability* of legal wrong by defendant. Despite this and despite its conclusion that the direct and circumstantial evidence "does not establish negligence on defendant's part as a more probable inference than an inference of pure accident or of a [non-actionable] battery"; though it was "compatible with the existence of negligence on defendant's

part as a possible cause of the injury" the court below nevertheless applied the doctrine. In consequence it held that the burden of explanation had been shifted to the defendant and that defendant was liable because it had failed to adduce evidence "fairly explanatory of the event that produced the injury to the plaintiff."

It was plainly error to apply the doctrine of *res ipsa loquitur* where, as here, the circumstances shown by the evidence did not indicate that it was any more probable that negligence caused the injury than that there was freedom from wrong, or indeed, that, as the trial court found, negligence or wrong as the cause of the injury was a possibility only.

Absent the inferences arising from the doctrine there was no evidence in this record to show that the defendant was guilty of negligent conduct and it was entitled to judgment.

The judgment of the District Court will therefore be reversed and the complaint dismissed.