**Lillian TRAUB, Plaintiff,**

v.

**HOLLAND–AMERICA LINE, Defendant.**

No. 63 Civ. 839.

United States District Court
S. D. New York.

June 8, 1967.

Hale, Kay, Grant, & Meyerson, New York City, for plaintiff, Herman D. Brand, New York City, of counsel.

Burlingham, Underwood, Barron, Wright & White, New York City, for defendant, William M. Kimball, New York City, of counsel.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This action for personal injuries sustained while plaintiff was a passenger aboard defendant's Dutch-flag S.S. Rotterdam was tried before me without a jury. The action, commenced in the New York Supreme Court, was removed to this court by the defendant on the ground of diversity.

### I.

I find the material facts here to be as follows:

On June 29, 1962 Mrs. Traub, a seventy-five year old widow and resident of New York, sailed on the S.S. Rotterdam for Holland. She had purchased her contract of passage from an agent in New York several weeks prior to her departure. She occupied Cabin A–192 with an adjoining bathroom approximately five feet by seven feet. On July 1st about 7:30 p.m., when the vessel was well at sea, Mrs. Traub drew a bath, disrobed and entered the bathroom. The bathroom door which opened to the inside toward the right was partially ajar. Mrs. Traub, standing and bending slightly over, was flushing the toilet by pressing the white porcelain handle on the flushometer unit when the handle suddenly came off causing her to lose her balance and strike her right shoulder against the bathroom door. As a result of the impact Mrs. Traub fractured her right scapula.

Prior to the accident Mrs. Traub had flushed the toilet many times and apart from a slight stiffness in the mechanism it seemed to work satisfactorily. Not surprisingly, Mrs. Traub herself was the only witness to the accident. She report-

ed the accident to the ship. The flush-ometer handle was found lying on the floor of the bathroom when the ship's personnel arrived.

According to the deposition of Koorn, the ship's coppersmith or plumber, read in evidence by defendant, Koorn replaced the handle of the flushometer in Mrs. Traub's bathroom after the accident. He had done this in other bathrooms on numerous occasions but had not worked on the toilet in Cabin A–192. During the course of a voyage Koorn would customarily clean 20 or 25 flushometer handles and replace perhaps two or three. The cabin stewards had the duty of testing the toilet flushing devices daily. Apart from this there was no evidence that Mrs. Traub's toilet had been so tested.

Defendant did not produce the handle which had come off at the time of the accident or the flushometer which had been in Mrs. Traub's bathroom. Instead it produced what it claimed to be a representative flushometer unit used in all S. S. Rotterdam bathrooms.[1] Quite surprisingly while I was examining this unit during my study of the case the porcelain handle[2] used to activate the flushing mechanism came off the shaft to which it was attached. After being put back on the shaft and secured by a small screw going through its outside end it constantly became loosened and then came off if it was turned several times in a counter-clockwise direction. This appears to be because the screw cap which secures the handle to the threaded shaft firmly attached to the body of the unit does not engage more than a few threads on the 2¾″ shaft. Therefore the porcelain handle becomes loose and slides off easily unless the screw cap is kept firmly tightened. And even when the cap is screwed tightly in place it will work free when the handle is turned, and this result is to be expected from the frequent pressures and stresses to which such a device is subjected. Thus defend-

ant's own exhibit demonstrates the probable cause of Mrs. Traub's accident.

## II.

Despite references to Dutch law the parties apparently agree that general maritime law controls here. Plaintiff's reference to fragmentary excerpts from the Dutch civil[3] and commercial codes[4] and the defendant's countervailing references "for the purpose of convincing the court that plaintiff's evidence of Dutch law is entirely insufficient and that it would be quite inappropriate for the court to undertake an independent effort to cure that deficiency"[5] only tend to confirm what the parties themselves concede—that in any event Dutch law with respect to liability in this case is not substantially different from general maritime law.

This is a case like Mayer v. Zim Israel Nav. Co., 289 F.2d 562, 563–64 n. 1 (2d Cir. 1960), where it is unnecessary to resolve the choice-of-law issue. I will therefore apply general maritime law. See Alpert v. Zim Lines, 370 F.2d 115 (2d Cir. 1966) (Feinberg, J.); Moore v. American Scantic Line, Inc., 121 F.2d 767 (2d Cir. 1941); Maibrunn v. Hamburg-American S. S. Co., 77 F.2d 304 (2d Cir. 1935) (L. Hand, J.); cf. Siegelman v. Cunard White Star, 221 F.2d 189, 192 (2d Cir. 1955); Jansson v. Swedish American Line, 185 F.2d 212, 218, 30 A.L.R.2d 1385 (1st Cir. 1950); Caruso v. Italian Line, 184 F.Supp. 862 (S.D. N.Y. 1960).

## III.

Despite the fact that defendant was the one who removed the case from the New York Supreme Court to this court, at the close of the trial it moved to dismiss because plaintiff has not shown the requisite jurisdictional amount but has since conceded that its motion is without merit. The motion is denied.

---

1. Defendant's Exhibit G.

2. Defendant's Exhibit G–1.

3. Articles 1401–03.

4. Articles 522–24.

5. Defendant's Post-Trial Brief, pp. 9, 11.

■■ It should be said that such a contention lies ill in the mouth of the removing party. Moreover, in her complaint in the state court plaintiff sought $50,000 damages, and there is nothing to suggest that this claim was not made in good faith. Jurisdiction would be retained even if the case had been originally commenced in this court. Deutsch v. Hewes Street Realty Corp., 359 F.2d 96 (2d Cir. 1965). In any event, where removal is involved "[t]here is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court or that the parties have colluded to that end." Saint Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S.Ct. 586, 591, 82 L.Ed. 845 (1938). That is the case here. See Cunningham v. Bethlehem Steel Co., 231 F.Supp. 934 (S.D.N.Y.1964).

IV.

■ A passenger carrier has a duty "to exercise extraordinary vigilance and the highest skill to secure the safe conveyance of the passengers." Allen v. Matson Nav. Co., 255 F.2d 273, 277 (9th Cir. 1958), quoted with approval in Alpert v. Zim Lines, 370 F.2d 115, 116 (2d Cir. 1966). Plaintiff relies on res ipsa loquitur to establish defendant's negligence. This familiar doctrine "when applied, merely substitutes for proof of specific negligent conduct an inference of negligence arising out of the happening of the accident which, in itself, is sufficient to make out a *prima facie* case for the plaintiff. The burden of explanation then shifts to the defendant to come forward with evidence indicating that the accident was not due to its fault. But the ultimate burden of proof is not changed, for the plaintiff is still required, on the whole case, to convince the trier of the facts by a preponderance of the evidence that the accident was caused by the defendant's negligence." United States v. Ridolfi, 318 F.2d 467, 470 (2d Cir. 1963).

■ The requisites for the application of the doctrine are plainly present here: (1) the instrumentality causing the injury was in the exclusive control of defendant; (2) the accident would have happened without any fault of the plaintiff; and (3) there is a reasonable probability that in the ordinary course of events the accident would not have happened without some breach of the duty which defendant owed to the plaintiff. United States v. Ridolfi, supra; Van Carpals v. S. S. American Harvester, 297 F.2d 9, 11 (2d Cir. 1961) (Clark, J.) (dictum); see Restatement (Second), Torts § 328D.

To the extent the element of control retains significance, compare Talton v. United States Lines Co., 203 F.Supp. 17, 19 (S.D.N.Y.1962), it is clear that defendant had the exclusive responsibility as well as the sole capability for keeping the flushometer units in good order and condition. It is equally clear that the evidence conclusively exonerates Mrs. Traub from any responsibility for the accident. She was injured through no fault of her own while engaging in a customarily innocuous course of conduct— flushing the toilet.

■ Finally I find that an accident of this type ordinarily would not have happened without some negligence by the defendant. The evidence fully warrants the inference of negligence permitted by the *res ipsa* doctrine. Jungjohann v. Hotel Buffalo, 5 A.D.2d 496, 173 N.Y.S. 2d 340 (4th Dep't 1958), and Kane v. Ten Eyck Co., 267 App.Div. 789, 46 N.Y.S.2d 251 (3d Dep't 1943) (per curiam), *aff'd* per curiam, 292 N.Y. 701, 56 N.E.2d 115 (1944), both concluded that an inference of negligence was permissible where plaintiffs, guests in defendants' hotels, proved little more than that they were injured when porcelain handles on a faucet in their respective rooms broke while they were being used. See Gerard v. American Airlines, 272 F.2d 35 (2d Cir. 1959); Watson v. Compagnie Gen-

erale Transatlantique, 147 Misc. 697, 264 N.Y.S. 570 (N.Y.City Ct.) (1932).[6]

The defendant's evidence, far from furnishing an explanation indicating that the accident was not due to its fault, in fact tended to show the opposite. The precarious attachment of the handle on the shaft of the flushometer unit, said to be typical of those aboard the Rotterdam, in itself indicates that the handle was likely to come loose at any time and without any fault of the person who was using it. There was no showing that the unit in Mrs. Traub's bathroom had been tested except the general statement that it was the duty of cabin stewards to make such tests. The handle which came off was not produced and there was no testimony as to its condition, though it obviously was seen by the ship's personnel and probably by the ship's plumber. It was necessary to replace the handle in Mrs. Traub's bathroom which would not have been done had it not been defective in some respects.

██ On the preponderance of the evidence as a whole I find that defendant breached its duty as a carrier to exercise the highest degree of care to insure the safety of its passenger Mrs. Traub, and, indeed, was guilty of negligence even by more usual standards. This was true with respect to both the design and maintenance of the flushometer unit. The defendant is liable to plaintiff for the damages caused by the accident.

## V.

As to damages—

Mrs. Traub had considerable pain, suffering and discomfort as a result of her fractured right scapula. It was difficult and painful for her to comb her hair, eat and wash for some time after the accident. Her European trip was made unpleasant and uncomfortable because of her injury. After her return to New York in September 1962 she received several painful injections to relieve her pain and discomfort which continued well into 1963. However, there appears to be no significant permanent effect of the injury other than a slight and occasional stiffness in the joint which would naturally be somewhat aggravated in a woman of her age.

██ I find that reasonable compensation for the injury received, considering its nature and extent and for the pain and suffering and discomfort resulting therefrom, amounts to $2,500.

I find that plaintiff has shown special damages of $287.91 for the costs of such items as nurse and maid service, X-rays, drugs, medical treatment, massages and injections.

██ Mrs. Traub failed to establish that the claimed expense for car and chauffeur in transporting her and a friend from Rotterdam to Monte Cantini in Italy was made necessary by the accident. It appears that arrangements for the automobile and chauffeur were made long before the accident. I find that this expense was not incurred as a result of the accident or made necessary thereby and it will not be included in her damages.

Thus I conclude that plaintiff is entitled to recover from the defendant the sum of $2,787.91. Judgment will be entered accordingly.

The foregoing constitutes my findings of fact and conclusions of law in this case.

It is so ordered.

6. Doherty v. Arcade Hotel, 170 Or. 374, 134 P.2d 118 (1943), and Cottmire v. 181 East Lake Shore Drive Hotel Corp., 330 Ill.App. 549, 71 N.E.2d 823 (1947), look the other way, although the courts there placed undue emphasis on the discredited notion of control.