# LEONARD APPER et ux. v. EASTGATE ASSOCIATES et al.

[No. 160, September Term, 1975.]

*Decided November 5, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Darrow Glaser* for appellants.

*John P. Corderman* appellee Eastgate Associates. Submitted on brief by *William P. Nairn* and *Byron, Moylan & Urner* for other appellee.

ORTH, C. J., delivered the opinion of the Court.

On 11 February 1969 Leonard Apper, a wholesale camera salesman, checked into the Towne Motel in Hagerstown, Maryland, owned by Eastgate Associates and others[1], as an overnight guest. He dined at a nearby restaurant and returned to his motel room. He watched television for a time, telephoned his wife and, around 10:00 p.m., took a bath. Upon completion of his bath, he drained the water and started to get out of the tub. "I went to raise myself to get out of the tub. I put my right elbow on the right side of the tub and I grabbed this handhold with my left hand and attempted to assist myself in getting up and the handhold broke away from the wall and it was a massive handhold . . . and it broke away from the wall and hit me across . . .

---

\* Note: *Certiorari* granted, Court of Appeals of Maryland, February 3, 1976.

1. The declaration filed alleged the owners to be Eastgate Associates, a limited partnership, M. Elizabeth Ribar, C. Joseph Molinaro, William H. Deck, David W. Moore, and M. Max Leder, co-partners, and Quality Courts Motels, Inc. They are hereinafter referred to as Eastgate.

the bridge of my nose." He fell back and hit his head, back and neck. He blacked out. "The next thing that I remembered was I opened my eyes and there was blood streaming down my face and my chest and that is the next thing that I recollect." He called for help and was taken to the hospital. The cut on the bridge of his nose was sutured. He suffered injuries to his back and neck. The "handhold" was a ceramic fixture set in the wall above the tub. It was known in the ceramic tile trade as a "soap and grab" and was intended to be used by bathers to help themselves in and out of the bathtub. It was installed with the expectation that bathers would so use it. Apper was alone in the room at all times, made no prior examination of the fixture, and noticed nothing unusual about it. It appeared to be securely fastened and was not loose to the touch. There were no warning signs or notices in regard to the fixture or its use. He used it as he had previously used similar fixtures on many other occasions in many other motels.[2]

On 13 January 1972 Apper and his wife instituted an action in tort in the Circuit Court for Washington County against Eastgate. He sought damages for the injuries he suffered which he alleged were caused by Eastgate's negligence. He and his wife sought damages for loss of consortium. On 17 February 1972 Eastgate filed a third party claim against Harold L. Jones, trading as Jones' Wallpaper, Linoleum and Tile Service (Jones), who installed the soap dish and handhold.[3]

The action was tried before a jury on 26 November 1974.

---

**2.** This is the substance of what is set out in the brief of Apper and his wife, appellants, and reflects evidence adduced at the trial. Appellees, in their briefs, adopted, without exception, the statement of facts in appellants' brief.

**3.** Quality Courts Motels, Inc. was not a party to this claim. The Appers filed an amended declaration naming Jones as an original defendant. A motion for summary judgment was granted with respect to Jones under the amended declaration, leaving him as a third party defendant. He died while the litigation was pending and letters of administration on his estate were granted to his widow, Goldie Mae Jones. Upon suggestion, she was substituted in her capacity of personal representative as the third party defendant.

At the close of evidence offered by the Appers, the court directed a verdict against them and discharged the jury.

## THE STATUS OF THE APPEAL

The transcript of the proceedings with respect to the motion for a directed verdict reads:

"MOTION FOR DIRECTED VERDICT MADE AT END OF PLAINTIFF'S CASE BY DEFENDANTS.

BY THE COURT: At this stage, it is customary for the Defendants to make certain Motions in a civil case for a Directed Verdict which has been made and in this case, has been granted. I have ruled that these Plaintiffs are not entitled to recover under the laws of Maryland and therefore there is nothing to send to the Jury and the trial is at an end and you are excused.

END OF CASE " [4]

There is in the record transmitted to us a document entitled "Defendant's Motion for a Directed Verdict." It reads:

"Now comes Eastgate Associates, Defendant, herein, at the close of the Plaintiff's evidence and moves the Court to direct a verdict in its favor for the following reasons:

1. That the Plaintiff has offered no evidence of primary negligence on the part of the Defendant.

2. That the uncontradicted evidence in this case shows the Plaintiff is guilty of contributory negligence."

---

[4] The transcript continued with a statement by one of the attorneys for the Appers:

"Plaintiffs object to the Defendants' Motion for Directed Verdict and takes exception to the Court's granting the Motion for Directed Verdict on the grounds that the circumstances of the case as shown by the evidence in the case thus far places this case squarely within the doctrine of res ipsa loquitur or inferred negligence and Plaintiff states that it is error of the Court not to apply the doctrine of res ipsa loquitur as requested by the Plaintiff."

On it is endorsed, over the signature of the trial judge, "granted, Nov. 26, 1974." It is stamped as filed 26 November 1974 in open court. The docket entry under date of 26 November 1974 reads in relevant part:

"Plaintiff rests; Counsel for Defendant moves for a Directed Verdict in favor of the Defendant; Clerk enters objection to Motion on behalf of the Plaintiff in accordance with Md. Rule 552 a; Court grants Motion for Directed Verdict in favor of Defendants, Eastgate Associates, et al and against the Plaintiffs, Leonard Apper and Beverly Apper;"

The next entry on the docket is under date of 23 December 1974: "Order for Appeal by Plaintiffs Leonard Apper and Beverly Apper, His wife, filed;" The "ORDER FOR APPEAL BY PLAINTIFFS, LEONARD APPER AND BEVERLY APPER, HIS WIFE", is included in the record, stamped as filed 23 December 1974, at 10:49 A.M. It reads, over the signature of one of the appellants' attorneys:

DEAR MR. CLERK:

Enter an Appeal to the Court of Special Appeals from the Judgment entered in this action on November 26, 1974."

No judgment had been entered. The verdict directed by the court was no more a judgment than would be a verdict of the jury.[5] There being no final judgment, there was nothing from which to appeal. Courts Art. § 12-301.

Despite that the appeal was premature, we shall, as we did in *Stitzel v. Kurz*, 18 Md. App. 525 (1973), *cert. den.* 18 September 1973 and 9 October 1973, discuss the facts and the applicable law in the light of the substantial merits of the case, Maryland Rule 1071, and we shall then fashion a

---

5. Rule 552, § e provides:

"Upon the granting by the court of an instruction directing a verdict, the court shall instruct the clerk to enter such verdict, and to note that it has been entered by the court's instruction. It shall not be necessary for the jury, by its foreman, or otherwise, to render such verdict."

result which will give due recognition to those substantial merits. We do so to save judicial time and unnecessary expense and in the belief that our action is in the best interest of the administration of justice.

## THE LAW

In an action for negligence the plaintiff has the burden of proving: (a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff; (b) failure of the defendant to conform to the standard of conduct; (c) that such failure is a legal cause of the harm suffered by the plaintiff; and (d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages.[6] *C. & P. Tel. Co. v. Hicks*, 25 Md. App. 503, 525 (1975), *cert. den.* 3 July 1975, citing Restatement (Second) of Torts, § 328 A (1965). The standard of conduct established by law arose from Apper's status as an invitee of Eastgate. "An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. The owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Bramble v. Thompson,* 264 Md. 518, 521 (1972). See *Kight v. Bowman,* 25 Md. App. 225, 229 and 230-231, n. 3 (1975).[7] It is manifest that in the case *sub judice* that because there was no direct evidence on the question, it was necessary that the doctrine of *res ipsa loquitur* be invoked in order to permit an inference that Eastgate failed to conform to the standard of conduct

---

**6.** It was stipulated by the parties that the record on appeal shall not include the entire transcript of the proceedings, "but only that part relating to the issues of negligence and not to damages". No issue as to damages was to be raised on appeal. Maryland Rule 1026 c 2.

**7.** "An innkeeper is not an insurer of the personal safety of his guests and is only bound to the exercise of reasonable care in that behalf." 3 T. Cooley, Law of Torts, § 462 (4th ed. 1932). It seems that in antiquity there was some authority for holding an innkeeper strictly liable. 2 F. Harper & F. James, The Law of Torts, § 12.3, n. 1. See 2 J. Kent, Commentaries 593 (14th ed. 1896).

required with respect to Apper. It is only through the circumstantial evidence of negligence supplied by that doctrine that the case could properly be submitted to the jury. Thus, although the issue for decision is the propriety of the direction of the verdict,[8] the determination of the issue depends upon whether the doctrine of *res ipsa loquitur* arose upon the facts and circumstances. Appellants claim that the doctrine did arise. Appellees urge that it did not because appellants failed to establish the elements necessary to invoke it.[9]

---

**8.** We talked about the obligation of the trial judge with respect to Rule 552, "Directed Verdict", in Buchanan v. Galliher and Harless, 11 Md. App. 83, 87 (1971), *cert. den.* 261 Md. 722:

"When a trial court is called upon by a motion for a directed verdict to rule upon the legal sufficiency of the evidence to require submission of any issue to a jury, the court must assume the truth of all credible evidence on that issue and of all inferences fairly deducible therefrom, and consider them in the light most favorable to the party against whom the motion is made, and if such evidence and inferences lead to conclusions from which reasonable minds could not differ, then the issue is one of law for the court and not one of fact for the jury."

**9.** We said in *Hicks, supra,* at 529-530:

"We believe that the true interpretation of *res ipsa loquitur* in Maryland, despite apparent inconsistencies in discussing it, is that espoused by the great majority of American courts. The doctrine merely provides a permissible inference of negligence. This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. As for the plaintiff, the doctrine furnishes sufficient evidence to go to the trier of fact. As for the defendant, the burden of proof is not shifted to him, nor is any burden of introducing evidence cast upon him, *except in the very limited sense that if he fails to do so, he runs the risk that the trier of fact may, and very likely will, find against him.* In other words, he has no duty to go forward with the evidence, but by not doing so he runs the risk of non-persuasion. Of course, there will be occasional cases where the inference of negligence is so clear that no reasonable man could fail to accept it. In such cases, if the defendant offers no explanation, a verdict should be directed for the plaintiff."

" 'In other words, the procedural effect of a res ipsa case is a matter for the strength of the inference drawn, which will vary with the circumstances of the case.' " W. Prosser, Torts, § 40, p. 230 (4th ed. 1971).

We discussed *res ipsa loquitur* at length in *Hicks.* We noted the early warning of the Court of Appeals in Howser v. C. & P. R. R. Co., 80 Md. 146, 153 (1894), that "the most careful scrutiny should be given to the circumstances attending the accident, and whilst an excellent authority has said that after all the question resolves itself into one of common sense, we would add that it should be of a high order. For it is unquestionably true

We found in *Hicks* that, in this jurisdiction, there are three elements which a plaintiff must show to invoke the doctrine of *res ipsa loquitur.* 25 Md. App. at 513. We thought that the Court of Appeals had settled on this language to express those elements, *id.*, at 516:

> "1. A casualty of a sort which usually does not occur in the absence of negligence.
> 2. Caused by an instrumentality within the defendant's exclusive control.
> 3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff."

## APPLICATION OF THE FACTS TO THE LAW

We consider the elements necessary to invoke the doctrine of *res ipsa loquitur* in the light of the evidence adduced to prove them, but we do so in the order inverse to the listing of them.

### The Act of the Person Injured

A person injured must eliminate his own conduct as a cause of the injury. He may do so by showing that he has done nothing abnormal with the instrumentality causing the injury and has used it in the manner and for the purpose for which it was intended. *Sweet v. Swangel,* 166 N. W. 2d 776, 778 (1969), quoting W. Prosser, *Res Ipsa Loquitur in California,* 37 Calif. L. Rev. 183, 202 (1949):

> " ' The plaintiff need only tell enough of what he

---

that the authorities are by no means in accord on the question which arises out of the doctrine of *res ipsa loquitur.*" Over three-quarters of a century later the Court observed: "[O]ur predecessors have shown great restraint in the application of res ipsa loquitur and have not extended it beyond the classic factual patterns where it has proved particularly useful." Stoskin v. Prensky, 256 Md. 707, 713 (1970). The doctrine, when applicable, merely asserts a rebuttable conclusion deduced from known and obvious premises. Benedick v. Potts, 88 Md. 52, 58 (1898). "There is, therefore, a difference between inferring as a conclusion of fact *what* it was that did the injury; and inferring from a known or proven act occasioning the injury that there was negligence in the act that did produce the injury. To the first category the maxim *res ipsa loquitur* has no application; it is confined, when applicable at all, solely to the second." *Id.*, at 56.

did and how the accident happened to permit the conclusion that the fault was not his. Again he has the burden of proof by a mere preponderance of the evidence; and even though the question of his own contribution is left in doubt, res ipsa loquitur may still be applied under proper instructions to the jury.' "

The evidence is clear that Apper did nothing abnormal with the fixture. He used it in the manner and for the purpose for which it was intended. It was designed and installed to assist a bather to get in and out of the tub and that is precisely the use he made of it. It is true that he was an actor in the event which caused the injury, but to bring himself within the doctrine, it is not necessary that he be the completely inert object of the negligent act. The act of the injured person which sets in motion the instrument of the injury must not be confused with an act of the injured party by which, sharing responsibility in some way with the defendant for the creation or maintenance of the dangerous condition, he is deemed also to share the negligence. *Kane v. Ten Eyck Co., Inc.*, 175 N.Y.S.2d 88, 92 (1943).[10] On the evidence Apper could be found to be exonerated from any responsibility for the accident. It permitted a conclusion that he was injured through no fault of his own while engaged in a customarily innocuous course of conduct — getting out of a bathtub. We find that there was evidence to show the third element.

*Exclusive Control*

There was also evidence sufficient in law to prove the second element, that the casualty was caused by an instrumentality within the exclusive control of the defendant.[11] The fixture was exclusively under the control

---

**10.** Kane v. Ten Eyck Co., Inc., 267 App. Div. 789, 46 N.Y.S.2d 251 (3rd Dep't 1943) per curiam, aff'd, per curiam, 292 N. Y. 701, 56 N.E.2d 115 (1944). The citation in the text above is to an opinion written upon a motion to set aside the verdict.

**11.** For a comprehensive discussion of "exclusive control", see *Hicks, supra,* at 518-523.

We note that we expressly affirm our discussion and conclusions with respect to the law concerning the doctrine of *res ipsa loquitur* as set out in *Hicks*.

and maintenance of Eastgate, and Eastgate had exclusive knowledge of the care exercised in the control and maintenance of that instrumentality. Apper was a guest in the motel. The motel owed him the duty of providing accommodations that were reasonably safe for the use contemplated, and, where it furnished appliances, of furnishing them in such a condition that with ordinary use they would be reasonably safe. The motel rented the room and appliances and it had them under its exclusive control with respect to installation and maintenance. It retained such control of the equipment it furnished, notwithstanding that it furnished Apper with possession of the equipment while he was a guest. See *Jungjohann v. Hotel Buffalo*, 173 N.Y.S.2d 340, 342 (4th Dep't 1958), quoting with approval *Kane v. Ten Eyck Co., Inc., supra*. The court in *Kane* said, at 91-92:

> "The room in the inn is regarded as part of 'the house of the innkeeper.' Rodgers v. People, 86 N. Y. 360. * * * [T]here was no division in control or responsibility in the duty of the hotel, having accepted him as a guest, to furnish reasonably safe facilities to this plaintiff. The hotel's duty to plaintiff was singular and it certainly was not divided with plaintiff . . . at the point where plaintiff assumed occupancy of the room."

Eastgate had the exclusive responsibility as well as the sole capability for keeping the "soap and grab" in good order and condition. See *Brown Hotel Company v. Marx*, 411 S.W.2d 911, 915 (Ky. 1967).

*The Nature of the Casualty*

The evidence fully warranted the inference of negligence permitted by the *res ipsa* doctrine. Not only was it legally sufficient to show that the fixture was within the exclusive control of Eastgate and that Apper was exonerated from any responsibility for the accident, but, also, the casualty was of the sort which usually does not occur in the absence of someone's negligence. In the ordinary instance, no injurious operation is to be expected from the use of the fixture unless

from a careless construction, maintenance or user. We think that the jury could have properly inferred the injury was probably caused by some negligent act on the part of Eastgate.

We look first at *Byrne v. Boadle,* 2 Hurl. & Colt. 722 (1863) which launched the *res ipsa* doctrine into the orbit of tort law. Chief Baron Pollock said, at 726:

"The learned counsel was quite right in saying that there are many accidents from which no presumption of negligence can arise, but I think it would be wrong to lay down as a rule that in no case can presumption of negligence arise from the fact of an accident. Suppose in this case the barrel had rolled out of the warehouse and fallen on the plaintiff, how could he possibly ascertain from what cause it occurred? It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford prima facie evidence of negligence. A barrel could not roll out of a warehouse without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous. So in the building or repairing a house, or putting pots on the chimneys, if a person passing along the road is injured by something falling upon him, I think the accident alone would be prima facie evidence of negligence. Or if an article calculated to cause damage is put in a wrong place and does mischief, I think that those whose duty it was to put it in the right place are prima facie responsible, and if there is any state of facts to rebut the presumption of negligence, they must prove them. The present case upon the evidence comes to this, a man is passing in front of the premises of a dealer in flour, and there falls down upon him a barrel of flour. I think it apparent that the barrel was in the custody of the defendant who occupied the premises, and who is responsible

for the acts of his servants who had the control of it; and in my opinion the fact of its falling is prima facie evidence of negligence, and the plaintiff who was injured by it is not bound to show that it could not fall without negligence, but if there are any facts inconsistent with negligence it is for the defendant to prove them."

Barons Bramwell, Channell and Pigott were of the same opinion.[12] We see a parallel between the casualty there and the casualty here. Just as the barrel could not roll out of a warehouse without some negligence, the "soap and grab" could not pull out from the wall without some negligence. The fixture was in the control of Eastgate, and the fact of its pulling loose from the wall was *prima facie* evidence of negligence. Apper was not bound to show directly that it could not have pulled loose without negligence. We also see a parallel in *Blankenship v. Wagner*, 261 Md. 37 (1971) in which the evidence showed only that while attempting to carry a refrigerator into a house by way of the rear steps, the construction, maintenance and exclusive control of which were under the dominion of the defendant, the delivery man was injured when the second step broke in half.[13] The evidence there no more showed why the step broke than the evidence here showed why the fixture pulled

---

12. Baron Channell had this to say, at 728:

"The first part of the rule assumes the existence of negligence, but takes this shape, that there was no evidence to connect the defendant with the negligence. The barrel of flour fell from a warehouse over a shop which the defendant occupied, and therefore prima facie he is responsible. Then the question is whether there was any evidence of negligence, not a mere scintilla, but such as in the absence of any evidence in answer would entitle the plaintiff to a verdict. I am of opinion that there was. I think that a person who has a warehouse by the side of a public highway, and assumes to himself the right to lower from it a barrel of flour into a cart, has a duty cast upon him to take care that persons passing along the highway are not injured by it. I agree that it is not every accident which will warrant the inference of negligence. On the other hand, I dissent from the doctrine that there is no accident which will in itself raise a presumption of negligence. In this case I think that there was evidence for the jury, and that the rule ought to be absolute to enter the verdict for the plaintiff."

13. The weight of the delivery man was given as 230-240 pounds but the weight of the refrigerator was unknown.

from the wall. The Court stated that although the case did not fall neatly within the "classic pattern" of *res ipsa* cases in which someone is struck by a falling object, it came within the ambit of the doctrine. *Id.*, at 42-43. It held that the grant of a directed verdict in favor of the defendant was erroneous because the *res ipsa* doctrine supplied sufficient evidence of negligence on the part of the defendant to submit the case to the jury.

Cases in other jurisdictions to the same effect are even more factually apposite. In *Lyttle v. Denny,* 71 A. 842 (Pa. 1909) the evidence was that the heavy head of a bed fell forward and down over a guest in the hotel while he was quietly lying upon the bed, and injured him severely. The court said, at 843: "This could not have occurred had the bed been in proper condition for use." It held that the facts brought the case within the doctrine of *res ipsa. Murphy v. Bargain City,* 201 A. 2d 299, 301 (Pa. 1964) and *Paul v. Hess Bros.,* 312 A. 2d 65, 67 (Pa. Sup. 1973), are both in accord with the *Lyttle* teaching that "the top of a folding bed does not fall down if proper care is taken putting it up", so that *res ipsa* applied. In *Cross v. Laboda,* 152 A. 2d 792 (Pa. 1959) a patron of a restaurant was injured when a seat on a stool on which he was sitting broke, causing him to fall to the floor. The patron produced no evidence as to the construction and quality of the stool or regarding the innkeeper's inspection of it. The court in concluding that the *res ipsa* doctrine was applicable, reiterated the language in *Lyttle* at 843, which quoted the language of *Delahunt v. United Tel. Co.,* 64 A. 515, 517 (Pa. 1906): "Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." In *Kane v. Ten Eyck Co., Inc., supra, Jungjohann v. Hotel Buffalo, supra,* and *Brown Hotel Company v. Marx, supra,* the doctrine of *res ipsa* was applied when an injury to a guest in a hotel was caused by the breaking of a handle of a bathroom faucet he was turning. In *Schanberg v. New York,* 296 N.Y.S.2d 646 (1969)

it applied where the faucet handle which broke was in an office of the Attorney General of New York. In *Traub v. Holland-American Line,* 278 F. Supp. 814 (S.D.N.Y. 1967) *res ipsa* supplied evidence of negligence where a passenger on a ship was injured when the handle broke while she was flushing the toilet in her cabin. These cases cite numerous other cases with like holdings. See, for example, *Sweet v. Swangel, supra,* involving a collapse of a motel chair, which, at 779, cites cases in other jurisdictions which applied *res ipsa loquitur* in situations considered by the court to be factually similar.[14] There are, of course, cases which look the other way. See, for example, *Doherty v. Arcade Hotel,* 134 P. 2d 118 (Or. 1943); *Cottmire v. 181 East Lake Shore Drive Hotel Corp.,* 71 N.E.2d 823 (Ill. 1947); *Trembly v. Capital Co.,* 201 P. 2d 398 (Cal. 1949); *Hunter v. Hotel Sylvania Co.,* 34 A. 2d 816 (Pa. 1943). We are not persuaded by them. We find that the evidence was sufficient to prove the first element.

## DECISION

Having shown the three elements which a plaintiff must prove to invoke the doctrine of *res ipsa loquitur,* Apper was entitled to have the doctrine applied. Upon its application, there would have been such evidence of negligence as to make unwarranted the grant of Eastgate's motion for a directed verdict at the close of evidence offered by Apper. We hold that the court erred in granting the motion. Apper should be afforded a new trial.

We emphasize that the doctrine of *res ipsa loquitur* merely provides a permissible inference of negligence. See note 9, *supra.* Negligence may be rebutted by testimony and evidence produced on behalf of Eastgate. In the words of

---

14. Appellants refer us to Hillinghorst v. Heart of Atlanta Motel, Inc., 122 S.E.2d 751 (Ga. 1961) in which there was a "strikingly similar factual situation" to that in the instant case. A paying guest in a motel was injured when in pulling himself out of the bathtub, the handle of a porcelain "soap and grab", affixed to the wall above, crumbled in his hand. But as appellants point out, the opinion of the court did not involve the doctrine of *res ipsa.* The holding was that it was error to sustain a motion to dismiss in the nature of a general demurrer because the allegations of negligence were sufficient. The court did, however, discuss the duty of an innkeeper to a guest and the breach of that duty.

Chief Baron Pollock: "[I]f there are any facts inconsistent with negligence it is for the defendant to prove them" *Byrne v. Boadle, supra,* at 726.

## DISPOSITION

We have, as we indicated, discussed the facts and the applicable law in the light of the substantial merits of the case even though the appeal is premature. We noted that we would fashion a result to give due recognition to those substantial merits. Although we must dismiss the appeal, we remand the case with direction that judgment be entered in favor of appellees for costs.[15] For a period of thirty days after the entry of judgment, the trial court has revisory power and control over it. Rule 625, § a. Upon a proper and timely motion, the trial judge should strike the judgment and order a new trial. We observe that the order entered by this Court and the opinion on which the order is passed shall be conclusive as to the points finally decided thereby.

> *Appeal dismissed; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellants; mandate to issue forthwith.*

---

**15.** The entry of judgment upon the granting of the directed verdict in favor of Eastgate would effectively dispose of the third party claim. Ambrose v. Kent Island Yacht Club, 22 Md. App. 133, 139 (1974). If the judgment is stricken, the third party claim, would, of course, be revived.