Keith **WRIGHT**, Plaintiff,

v.

The **UNITED STATES of America** and the **United States Department of Agriculture, the United States Forest Service,** Defendants and Third-Party Plaintiffs,

v.

**UTILITY TOOL & EQUIPMENT COMPANY, INC., Maxon Industries, Inc., and Stone Hydraulic Company,** Third-Party Defendants.

No. CV 77–6–M.

United States District Court,
D. Montana,
Missoula Division.

June 27, 1979.

Robert W. Minto, Jr., Worden, Thane & Haines, Missoula, Mont., for plaintiff.

Robert O'Leary, U. S. Atty., Butte, Mont., for defendants and third-party plaintiffs.

Mulroney, Delaney, Dalby & Mudd, Missoula, Mont., for Utility Tool & Equip.

Corette, Smith & Dean, Butte, Mont., for Maxon Industries, Inc.

Garlington, Lohn & Robinson, Missoula, Mont., for Stone Hydraulic Co.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Plaintiff leased a warehouse to the defendant United States. The warehouse burned, and plaintiff sued the United States for damages under the Federal Tort Claims Act (28 U.S.C. § 1346(b)). The case was submitted to the court for decision on an agreed statement of facts containing the following:

### II.

That on or about Wednesday, September 25, 1974, at approximately five o'clock P.M., a building owned by the Plaintiff and a portion of which was leased to the

Defendants and known as Warehouse # 2, was destroyed by fire, which fire originated within the confines of that portion leased to Defendants.

### III.

That at all times pertinent hereto the portion of the building where the fire started was in the care, custody and control of Defendants under the terms of a validly executed lease agreement.

### IV.

That on or about September 25, 1974, at approximately five o'clock P.M., DONALD WILSON, a United States Forest Service employee, while acting within the course and scope of his employment, backed a United States Forest Service truck identified as truck # 8052 into Warehouse # 2 preparatory to going off duty and locking up the facility. Said employee apparently backed truck # 8052 against a pile of sleeping bags which activated an electric hydraulic lift gate mounted on the rear of said truck. The mechanism was manufactured by Maxon Industries, Inc. and contained an electric hydraulic pump unit complete with electrical switch which was manufactured by Stone Hydraulics, Inc. The electric hydraulic lift gate mechanism was already in its up position at the time and the lift gate mechanism continued to run, overheating and igniting the sleeping bags. As an alternative Donald Wilson backed said truck # 8052 into a position adjacent to said pile of sleeping bags so as to allow said sleeping bags to collapse against the truck coming into contact with the lift gate mechanism which then overheated causing said sleeping bags to ignite.

### V.

That at all times pertinent hereto truck # 8052 was in the care, custody and control of Defendants.

### VI.

That the sleeping bags in question were soiled sleeping bags piled in preparation for cleaning. That they were piled in a random fashion near the rear of the warehouse so it was possible that said pile collapsed against the truck as alleged in Paragraph IV above.

### VII.

That the source of the fire which destroyed Plaintiffs [sic] building was United States Forest Service truck # 8052 and the adjacent pile of sleeping bags.

### VIII.

That the damages sustained by Plaintiff as a result of said fire have a dollar value amounting to $59,126.00 . . . .

On the basis of the agreed facts, which I am bound to enforce,[1] I find that the United States was negligent and that that negligence was the proximate cause of the damage.

The doctrine of res ipsa loquitur is applicable in Federal Tort Claim cases,[2] and is to be given the effect which the Montana law gives it.[3] Under Montana law a rebuttable presumption of negligence arises "when an instrumentality which causes injury, without any fault of the injured person, is under the exclusive control of the defendant at the time of the injury, and the injury is such as in the ordinary course of things does not occur if the one having such

---

1. *A. Duda & Sons Cooperative Association v. United States*, 504 F.2d 970 (5th Cir. 1974).

2. *United States v. Ridolfi*, 318 F.2d 467 (2d Cir. 1963); *United States v. Johnson*, 288 F.2d 40 (5th Cir. 1961); *United States v. Hull*, 195 F.2d 64 (1st Cir. 1952); *White v. United States*, 193 F.2d 505 (9th Cir. 1951); *United States v. Kesinger*, 190 F.2d 529 (10th Cir. 1951).

3. *United States v. Ridolfi*, 318 F.2d 467 (2d Cir. 1963); *White v. United States*, 193 F.2d 505 (9th Cir. 1951).

control uses proper care  .  .  .  ."[4] This presumption has the weight of evidence.[5]

While the doctrine of res ipsa loquitur is not usually applicable in cases of fires of unknown origin,[6] in this case the warehouse, the truck, and the sleeping bags were all in the exclusive possession of the United States; no fault of any kind is chargeable to the plaintiff, and in the ordinary course of events unattended trucks do not spontaneously combust and cause fires.[7] The conduct of the truck driver in backing into or running over sleeping bags and somehow tripping the lift mechanism on the tailgate assembly of the truck, and in leaving the scene without discovering that he had done so, does not in my opinion dispel the presumption of negligence which the law of Montana compels me to draw.[8]

There is a further factor in this case which should be discussed. The United States, proceeding upon the theory set out in the agreed facts in a third-party complaint, charged the manufacturers with negligence in the design and manufacture of the tailgate assembly. By stipulation, the issues as to the third-party complaint were tried to a jury. The plaintiff did not attend that trial. At the trial the Government called experts who testified as to its theory, and the manufacturers called in ex-

perts who testified to the contrary. On this conflicting evidence the issues were submitted to a jury by special verdict, Question No. 1 of which was: "Was the fire in Warehouse No. 2 caused by an over-heated, self-contained hydraulic power unit on the Tuk-a-way tailgate assembly?" The answer to this question was "no." The finding of the jury is, of course, contrary to the stipulated fact which is incorporated in my findings here. We have the paradox of the same court, albeit different fact-finders, reaching diametrically opposite conclusions.

Here there were, as it turned out, separate submissions with different evidence in each, and what happened could well have happened had there been no joinder.[9]

It is disquieting to our senses of fitness and logic that a judge should find that a fire was caused by an overheated motor and that a jury should find that it was not. It does not help much that the evidence before the judge was different from that before the jury because it is the one system which produces the contradictory results. But what happened here was ultimately inevitable since the Constitution requires that a third-party defendant faced with issues such as those posed by the third-party complaint here has a right to have those issues tried to a jury, and the Federal

---

4. *Whitney v. Northwest Greyhound Lines, Inc.*, 125 Mont. 528, 533, 242 P.2d 257, 259 (1952). *See also Montana Deaconess Hospital v. Gratton*, 169 Mont. 185, 545 P.2d 670 (1976); *Stocking v. Johnson Flying Service*, 143 Mont. 61, 387 P.2d 312 (1963).

5. *Davis v. Trobough*, 139 Mont. 322, 363 P.2d 727 (1961); *Hickman v. First National Bank*, 112 Mont. 398, 117 P.2d 275 (1941); *Vonault v. O'Rourke*, 97 Mont. 92, 33 P.2d 535 (1934).

6. W. Prosser, Law of Torts 216 (4th ed. 1971).

7. *Seeley v. Combs*, 65 Cal.2d 127, 52 Cal.Rptr. 578, 416 P.2d 810 (1966).

8. I am aware of the rule that, when the precise cause of an accident is shown, there is no room for the application of the doctrine of res ipsa loquitur. *Whitney v. Northwest Greyhound Lines, Inc.*, 125 Mont. 528, 242 P.2d 257 (1952). Here the exact manner in which the truck touched the sleeping bags, the method by which the starting mechanisms on the tailgate lift assembly were incorporated into the truck

and their characteristics as to being hidden or obvious, the manner in which the starting mechanisms were activated, the nature of the sounds which would be made by an activated tailgate lift assembly motor, and the nature of the inspection made by the driver after the truck backed into the sleeping bags and activated the motor, are not shown. In short, the explanation of the occurrence is not so full and complete as to destroy the inferences of negligence. See W. Prosser, Law of Torts 232 (4th ed. 1971).

9. "[W]hile practical difficulties may be imagined where the judge and jury disagree, such difficulties would be no more serious than those which might arise in separate actions against the government and its tortfeasor." Note, Joinder of the Government Under the Federal Tort Claims Act, 59 Yale L.J. 1515, 1520 (1950); *and see United States v. Yellow Cab Co.*, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

Tort Claims Act mandates that the same issues be tried by a judge. Given enough cases, sooner or later judges and juries trying identical issues on identical but conflicting evidence are bound to disagree. Disquieting as it may be, I know of no rule of law which requires a judge as a fact-finder to conform his findings to those reached by a jury, or vice versa. As I see it, the law is to the contrary.

Let judgment be entered in favor of the plaintiff and against the defendant in the amount of $59,126.00.[10]

---

**10.** Interest is not payable under the Federal Tort Claims Act prior to judgment. 28 U.S.C. § 2674.