Florence Cottmire, Appellant, v. 181 East Lake Shore Drive Hotel Corporation, Appellee.

Gen. No. 43,751.

550

Opinion filed February 26, 1947. Released for publication March 20, 1947.

PINES & STEIN, of Chicago, for appellant; ALVIN E. STEIN and IRVING ROTHHOLTZ, both of Chicago, of counsel.

BURT A. CROWE, of Chicago, for appellee; CARL E. ABRAHAMSON, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Florence Cottmire filed a complaint in the superior court of Cook county against 181 East Lake Shore Drive Hotel Corporation to recover damages for personal injuries sustained on September 13, 1940 as a result of the breaking of a porcelain handle attached to the bathtub water faucet in the bathroom of the apartment occupied by her in the hotel operated by defendant. The case came on for trial before the court and a jury. At the close of plaintiff's evidence the court instructed the jury to return a verdict finding defendant not guilty. A motion for a new trial was overruled and judgment was entered on the verdict. Plaintiff appealed.

The hotel at 181 East Lake Shore Drive, Chicago, rises 18 floors and contains 400 rooms of various sizes from single room apartments to 10 room apartments. Defendant furnishes to the occupants linens, electricity, light bulbs, furniture, cooking gas and equipment, chambermaid and laundry service; washes the windows and removes the garbage; provides elevator service, janitorial service, heat, hot and cold water and refrigeration; and to furnish these services it maintains a staff of permanent employees, such as chambermaids, engineers, electricians, plumbers, carpenters and maintenance men. To facilitate the rendering of the various duties and services, defendant retained a pass key to each apartment to enable its employees to enter the apartments at will. Plaintiff became an occupant of the hotel in 1937 without any agreement as to the duration of her stay. She did not at any time have a written lease. She lived in the first apartment she occupied two or three years, and paid a rental of $150 a month. She then moved to a smaller apartment on the 11th floor, for which she paid a rental of $90 a month. This apartment consisted of a living room, dinette, kitchenette and bathroom. The defendant provided her with furniture, linens, rugs, gas, cooking facilities, electricity, light bulbs, chambermaid and

laundry services, window washing, garbage removal, heat, hot and cold water and refrigeration. Mr. Nathanial Hoffert, manager of the hotel at the time of and prior to the occurrence, testified that the hotel furnished her with everything she required, including services and maintenance, and that it would make all repairs when notified, or when it "saw" that something needed attention.

The bathroom in plaintiff's room contained a toilet, water basin and a bathtub. The bathroom fixtures, faucets and handles were, on the day of the occurrence, the same, as far as she could tell, as when she moved into the apartment. The handles on the lavatory, wash basin and hot and cold bathtub water faucets were made of a white vitreous material, commonly known as porcelain. A short time prior to the occurrence the faucets on the bathtub had leaked, and in response to her complaint the defendant had one of its maintenance men repair it. The repairman, Fred Kossow, testified that when he went to her room in response to a complaint he found that the screws on the faucet handles were loose and that he secured the handles by tightening the screws. The defendant admits that plaintiff occupied one of its apartments, that it maintained and serviced the apartment, and that it made repairs to the water faucet handle involved.

On September 13, 1940 plaintiff entered the bathroom to prepare a bath. In doing so, she bent over the bathtub, grasped one of the porcelain water handles in her right hand and the other porcelain water handle in her left hand. The porcelain water handle held by her left hand broke as she was turning it. When the porcelain handle broke, her hand became covered with blood. Two pieces of the handle, received in evidence, dropped into the tub. The other pieces remained in her hand. She immediately immersed her hand in water. The blood continued to flow swiftly from a

deep and severe cut in her left index finger. She telephoned to the hotel switchboard, and speaking to the operator, asked that a physician be sent to her promptly. She then telephoned to a friend, Mrs. Ida Preeman, who lived in the hotel, asking that she come to her assistance. While awaiting assistance she wrapped a towel around her hand. Mrs. Preeman was the first to arrive and seeing that plaintiff's finger was bleeding profusely, made a tourniquet and bandaged the finger. The hotel manager then arrived and after placing another towel around her hand, he telephoned for a physician, who arrived in about 30 minutes. He treated the injury and ordered her to bed, where she remained about two weeks. Three or four weeks later the wound became infected and she called in her own physician, Dr. John Foster, who treated the wound from then on. She remained in bed for approximately another two weeks. Under the physician's supervision X-rays were taken and treatments prescribed. For hours at a time, over a period of three or four months, she was required to soak her hand in an Epsom salts solution. To prevent the finger from becoming stiff, she held a rubber ball in her hand and constantly kept the finger in motion by squeezing the ball.

The evidence shows that as a result of the occurrence a tendon in her left index finger was severed; that the tip of the finger was permanently disfigured; that she does not have its full use for either domestic or personal purposes; that prior to the occurrence, for her enjoyment and the enjoyment of others, she played the piano; that after the occurrence she was compelled to abandon this pleasure because she was unable to properly flex the left index finger in striking the piano keys. There was evidence that normal circulation in the finger is permanently impaired. Dr. John Foster was in the United States Army at the time of the trial. The parties stipulated as to what his testimony would be, were he to testify. His testimony, so stipulated,

corroborates the testimony of plaintiff as to her injuries and the treatments therefor. Prior to the time of the occurrence she had never noticed any cracks in the porcelain. She had never noticed or reported anything cracked, broken, defective or out of order about the porcelain itself. On the day of the occurrence she "believed that the faucet handle was in good condition and there was nothing about it to cause me to think it wasn't."

The trial court sustained defendant's objection to plaintiff's offer to prove that the defendant, by its manager and chief engineer, knew of their own knowledge that porcelain handles were dangerous; that on prior occasions porcelain handles on water faucets in the defendant hotel had broken under similar circumstances with serious injuries to the persons involved; that the defendant had instituted a replacement program by which metal handles were to replace all porcelain handles in the hotel; and that for this purpose it had purchased metal handles and had on hand at the time of the occurrence about three dozen such handles. She offered to prove that several months before the occurrence a chambermaid employed by defendant had been seriously injured by a similar porcelain handle breaking in her hand and under similar circumstances, and that that mishap, coupled with the knowledge possessed by the defendant manager and chief engineer of similar accidents under similar circumstances, and that porcelain handles were dangerous, impelled them to institute a replacement program substituting all porcelain handles with metal handles. The evidence shows that the program was delayed by the lack of funds available to the manager and engineering department, and that at the time of plaintiff's injury, although metal handles were on hand and available, the handles in her bathroom had not been replaced.

At the outset we are faced with the question whether the relationship of the parties was that of

landlord and tenant or innkeeper and guest. Sec. 7 of an Act for the Protection of Innkeepers (par. 4c, ch. 71, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 61.05 (3)]) reads:

"The word 'hotel' within the meaning of this act shall include every building or structure kept, used, maintained, advertised, and held out to the public to be a place where lodging, or lodging and food, or apartments, or suites, or other accommodations are offered for adequate pay to travelers and guests, whether transient, permanent or residential, in which twenty-five or more rooms are used for the lodging, or lodging and food, or apartments, or suites, or other accommodations of such guests."

Defendant's corporate name contains the word "hotel," which may be considered in determining the character of the occupancy. The statute recognizes that a person occupying an apartment, suite or other accommodation for pay is a guest regardless of whether that person is a transient or a permanent resident. Plaintiff was a permanent resident. Twenty-five or more rooms are used for the "lodging, or lodging and food, or apartments, or suites, or other accommodations of such guests," of whom plaintiff was one. The services to her as a permanent guest were apparently the same as the services to transient guests. We are of the opinion that the case is to be determined under the law applicable to the relationship of innkeeper and guest. The defendant was under a duty to provide reasonably safe premises and appliances. Plaintiff maintains that by showing the circumstances attending her injury, she brought herself within the res ipsa loquitur doctrine. In Paolinelli v. Dainty Foods Manufacturers, Inc., 322 Ill. App. 586, we held that where the death of a child was caused by a bone in a jar of soup mix manufactured by the defendant that the doctrine of res ipsa loquitur applied.

In *Welter v. Bowman Dairy Co.*, 318 Ill. App. 305, we held the doctrine applied where the plaintiff, an infant was injured by the consumption of milk from a bottle sold by the defendant. In these cases we found that the doctrine was applicable even though the jar and bottle had left the possession of the defendants. The general rule is that the doctrine is not applicable unless the instrumentality is in the control of the defendant. We are of the opinion that the case at bar falls within the general rule and that the doctrine of *res ipsa loquitur* is not applicable.

We turn to the contention of plaintiff that the trial court erred in refusing to admit proper and competent evidence offered by her. Plaintiff had a right to show, if she could, that the defendant by its manager and chief engineer knew from common experience that porcelain handles were dangerous; that they had common knowledge of the general qualities, characteristics and capacities of porcelain handles on water faucets to break without warning; that defendant's manager and chief engineer knew of a previous injury and under similar circumstances, involving a similar porcelain handle in the hotel; that in an effort to prevent like occurrences they were replacing porcelain handles with metal handles; and that at the time of the occurrence they had on hand three dozen metal handles. If plaintiff were permitted to make proof in accordance with her offer, then, in our opinion, the evidence introduced would make out a *prima facie* case. On a retrial plaintiff should be permitted to introduce, if she can, the evidence covered in her offer. Plaintiff should not be permitted to prove that following the occurrence a metal handle was substituted for the broken porcelain handle. Proof of improvement subsequent to an injury may not be made for the purpose of proof of negligence. In connection with proof of a similar injury to a maid, it must appear that the porcelain faucet which caused the injury was in sub-

stantially the same condition as the porcelain faucet in the case at bar and that the maid was not at fault. While the hotel employees cannot, in their testimony, invade the province of the jury, they may testify, if such be the fact that it was and is common knowledge that porcelain handles break without warning. There was no testimony as to the age of the porcelain handles, or whether with age such handles deteriorate so as to become dangerous.

For the reasons stated, the judgment of the superior court of Cook county is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded for a new trial.*

LEWE, P. J., and KILEY, J., concur.