2022 IL App (1st) 211482

No. 1-21-1482

Third Division
September 7, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| XUEDONG PAN, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20 L 4061 |
| | ) | |
| TINA KING and BELLA MO, | ) | |
| | ) | The Honorable |
| Defendants-Appellees. | ) | Margaret Ann Brennan, |
| | ) | Judge Presiding. |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Burke and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1        Xuedong Pan filed suit against Tina King and Bella Mo, owners of the rooming house in which plaintiff rented a room where he was violently attacked with a knife by Qiu Lin, another renter at the rooming house. In his three-count second amended complaint, plaintiff alleges that defendants (1) were negligent in numerous ways, including their failure to, *inter alia*, "reasonably screen tenants prior to agreeing to rent to them," (2) violated the Premises Liability

Act (740 ILCS 130/1 *et seq.* (West 2018)) by failing to maintain the common areas of the rooming house in a reasonably safe condition, and (3) breached an implied warranty that required them to take adequate and reasonable affirmative steps to allow plaintiff to safely and quietly inhabit the room he rented. Defendant King filed a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)), which the trial court granted with prejudice, finding that defendants did not owe plaintiff a duty of care. Plaintiff appealed the trial court's dismissal of his complaint and argues that defendants did owe plaintiff a duty of care. For the following reasons, we affirm the trial court's order granting King's motion to dismiss but vacate that portion of the order dismissing plaintiff's complaint with prejudice, thereby permitting plaintiff to replead his allegations.

¶ 2                                    I. BACKGROUND

¶ 3      On January 19, 2019, plaintiff responded to an online advertisement for a room rental in a rooming house owned and operated by defendants.[1] Plaintiff argues that, when he inquired about renting a room, defendants did not inquire into plaintiff's background, did not ask for references, did not ask if he had a prior criminal record, did not inquire if he had a history of prior evictions, and did not require a written application. Defendants rented a room to plaintiff without any known investigation.

¶ 4      This room rental agreement was memorialized in a signed, handwritten agreement that included only the names of the parties (Xuedong Pan and Tina King), the address of the room ("238 West 18th Street, 2nd floor 1 room"), the monthly rent ($700), and the term of the rental (one year). The agreement was silent as to any rules, regulations, or other provisions whatsoever. It is unclear to what extent it was known to plaintiff at the time he agreed to rent

---

[1]The following account of events is taken from plaintiff's second amended complaint.

the room that all common facilities outside of the room he slept in were to be shared with other renters. These shared facilities included bathrooms, toilet areas, a kitchen, and corridors and hallways.

¶ 5        Plaintiff alleges that defendants had a history of altercations between renters in the rooming house, including a 2018 knife attack on a renter by another renter, which was not disclosed to plaintiff at the time he agreed to rent the room.

¶ 6        In May 2019, about four months after plaintiff moved in, defendants rented a room to a person named Qui Lin (Lin), whom plaintiff did not know. Plaintiff alleges that defendants failed to conduct any inquiry into Lin's background and did not notify plaintiff or other renters that Lin would be moving into a room. According to plaintiff, "Mr. Lin demonstrated a quick and severe temper and became intentionally antagonistic toward other roomers, including Plaintiff." Plaintiff also alleges that Lin had been evicted from other rooming houses. Plaintiff and other renters complained to defendants about Lin's behavior, but defendants purportedly "failed to respond with rules, regulations, and limitations on when and how roomers could access common areas, and did not undertake any effort to respond to the roomers' complaints."

¶ 7        On August 26, 2019, plaintiff and Lin engaged in a verbal exchange regarding Lin's behavior. The exchange took place in the shared kitchen. Plaintiff alleges he advised Lin that his behavior was impeding the ability of other renters, including plaintiff, to "live in a quiet, safe and habitable rental room." According to plaintiff, Lin grabbed a large butcher knife and assaulted plaintiff multiple times and chased him in pursuit around the premises. The assault resulted in numerous deep cuts that injured various organs and parts of his body.

¶ 8    Plaintiff subsequently filed a complaint, amended complaint, and second amended complaint. The trial court's dismissal of the second amended complaint is the subject of the instant appeal.

¶ 9    The second amended complaint comprises three counts: I. negligence, II. premises liability, and III. breach of implied warranty of habitability. Under count I, plaintiff alleges that defendants were negligent in numerous ways, including, *inter alia*, failing to adopt rules for the maintenance of common areas, failing to adopt rules of conduct between renters, failing to respond to complaints from renters regarding other renters' activities and behavior, failing to secure common areas, failing to reasonably screen renters prior to renting to them, failing to disclose a history of altercations in the premises to plaintiff prior to renting to him, and renting rooms intended for single occupancy to multiple renters, causing overcrowding. According to plaintiff, these negligent acts and omissions were the direct and proximate cause of plaintiff's injuries. Under count II, plaintiff alleges that defendants owed renters a duty of ordinary care to keep the kitchen and other common areas of the rooming house in a reasonably safe condition and, by failing to do so, violated the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2018)). Under count III, plaintiff alleges that the lease agreement implied a warranty that defendants would take adequate and reasonable affirmative steps to allow plaintiff to safely and quietly inhabit the room he rented.

¶ 10    Defendant King filed a motion to dismiss plaintiff's second amended complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). King argued that plaintiff has failed to state a cause of action under all three counts. More specifically, King argued that plaintiff cannot establish a claim of negligence because the defendants did not owe plaintiff a duty. Second, King contended that plaintiff's premises liability claim fails because

4

plaintiff did not allege a defect in the rooming house. Finally, King argued that plaintiff's claim under a theory of implied warranty of habitability fails because there is no existing law to support the contention that such a warranty could extend to personal injuries arising from a criminal attack by a third party.

¶ 11    On October 22, 2021, the trial court issued a written order dismissing plaintiff's second amended complaint in its entirety, with prejudice. Regarding count I (negligence), the trial court found that plaintiff failed to plead a claim for negligence. The court found that the landlord-tenant relationship between plaintiff and defendants did not impose upon the landlords an obligation to protect tenants from injury by third parties. Regarding count II (premises liability), the trial court found that plaintiff failed to plead the existence or breach of a duty under the Premises Liability Act because the duty of an owner or occupier of land

"does not include any of the following: a duty to warn of or otherwise take reasonable steps to protect such entrants from conditions on the premises that are known to the entrant, are open and obvious, or can reasonably be expected to be discovered by entrant; a duty to warn of latent defects or dangers unknown to the owner or occupier of the premises; a duty to warn such entrants of any dangers resulting from misuse by the entrants of the premises or anything affixed to or located on the premises or a duty to protect such entrants from their own misuse of the premises or anything affixed to or located on the premises."

The trial court found the allegation under count III (breach of implied warranty of habitability) inapplicable here, as the injury did not result from defects in the construction, reconstruction, or rehabilitation of the rooming house.

¶ 12    This timely appeal of the trial court's October 22, 2021, order follows.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, plaintiff argues that the trial court erred in granting defendant King's section 2-615 motion to dismiss plaintiff's three-count second amended complaint. Plaintiff argues that defendants owed him a duty of care as a matter of law.

¶ 15    Dismissal pursuant to section 2-615 is proper only if a defect is apparent on the face of the complaint. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004). The appropriate inquiry is whether, assuming all well-pleaded facts are true, the complaint states a legally recognized cause of action. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). Courts construe the complaint's allegations in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Young*, 213 Ill. 2d at 441; *Wakulich*, 203 Ill. 2d at 228.

¶ 16    We review a trial court's order granting a section 2-615 motion to dismiss *de novo*. *Young*, 213 Ill. 2d at 440. *De novo* review means that we perform the same analysis that a trial judge would perform. *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25.

¶ 17    Plaintiff raises a single issue in the instant appeal: did defendants owe plaintiff a duty of care? Whether a duty exists is a question of law for the trial court to decide. *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379, ¶ 25 (citing *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006)). "[D]etermining whether a duty should be imposed involves considerations of public policy." *Marshall*, 222 Ill. 2d at 436; *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 303-04 (2000).

¶ 18    The parties here agree that a landlord-tenant relationship generally does not impose upon the landlord a duty to protect tenants from criminal activity by third persons on the landlord's property. The parties are correct—this is the law of the land. See, *e.g.*, *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 215-16 (1988) ("Generally, there is no duty requiring a landowner to protect others from criminal activity by third persons on his property absent a 'special

relationship' between the parties."); *Gress v. Lakhani Hospitality, Inc.*, 2018 IL App (1st) 170380, ¶ 15 ("While generally speaking, the owner or possessor of property does not owe a duty to protect invitees from the criminal acts of third parties, however, a notable exception to this is if a special relationship exists between the parties \*\*\*.").

¶ 19　　However, as recognized by our precedent, a duty may arise if there is a "special relationship" between the parties. *Marshall*, 222 Ill. 2d at 438 ("certain special relationships may give rise to an affirmative duty to aid or protect another against unreasonable risk of physical harm"). Our courts have recognized four categories of relationships that may create a duty of care: common carrier and passenger, innkeeper and guest, custodian and ward, and business invitor and invitee. *Marshall*, 222 Ill. 2d at 438-39. Still, even if a special relationship exists, the risk of physical harm must be reasonably foreseeable in order to impose liability. *Sameer v. Butt*, 343 Ill. App. 3d 78, 86 (2003); *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000).

¶ 20　　Thus, we engage in a two-step inquiry: (1) is there a "special relationship" between plaintiff and defendants and (2) was the physical assault on plaintiff reasonably foreseeable?

¶ 21　　　　　　　　A. Special Relationship

¶ 22　　In the case at bar, plaintiff urges us to find a "special relationship" between "the owner and operator of a rooming house and his tenant, where a renter only gets exclusive occupancy of a single sleeping room, but is forced to share common facilities." Essentially, plaintiff's suggestion is that the circumstances of the relationship in this case are more akin to an innkeeper-guest relationship (in which the innkeeper owes a duty of care to the guest) rather than a landlord-tenant relationship (in which the landlord does *not* owe a duty of care to the

tenant). In addressing that contention, we examine the rationale underpinning the existence of the innkeeper-guest exception.

¶ 23    The innkeeper-guest exception is one of four recognized exceptions to the general rule that a landowner does not have a duty to protect persons on his/her property from the criminal activity of third parties. *Sameer*, 343 Ill. App. 3d at 86. Property owners have a duty to exercise ordinary care in maintaining their property in a reasonably safe condition. *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 20. However, " '[o]nly the party in control of the premises can be held liable for a defective or dangerous condition on the premises.' " *Hanna v. Creative Designers, Inc.*, 2016 IL App (1st) 143727, ¶ 22 (quoting *Hilgart v. 210 Mittel Drive Partnership*, 2012 IL App (2d) 110943, ¶ 38. "It is axiomatic that if a landlord retains control of a portion of the premises leased to the tenant it has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. [Citations.] Conversely, a landlord is not liable for injuries caused by a defective condition on the premises leased to a tenant and under the tenant's control." *Rowe*, 125 Ill. 2d at 220-21.

¶ 24    Based on the foregoing case law, control of premises is determinative in deciding whether liability should be imposed. In the context of the innkeeper-guest relationship, our supreme court reasoned that, "since the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other, a duty should be imposed upon the one possessing control (and thus the power to act) to take reasonable precautions to protect the other one from assaults by third parties which, at least, could reasonably have been anticipated." (Internal quotation marks omitted.) *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 244 (2000). That is, the party in control of the premises at

issue is the party who must exercise ordinary care in maintaining those premises in a reasonably safe condition.

¶ 25    In the case at bar, the premises at issue are the kitchen area where plaintiff was stabbed by Lin. The kitchen area, toilet areas, bathrooms, and corridors are all shared premises over which the plaintiff did not have control. Plaintiff had a key only to the room in which he slept. He had no way to secure any other area. Indeed, much like a guest in a hotel, plaintiff here could only ensure that his room was locked; he had no means to ensure that any other area of the rooming house was kept in a safe condition. In fact, plaintiff here did not have his own toilet or shower; he was required to share these amenities with other renters. Thus, plaintiff in this case had control over even fewer areas that he needed to use than a typical guest in a hotel.

¶ 26    In addition to being in control of common areas of the rooming house, we cannot say that defendants fall outside the definition of "innkeepers," which, as discussed above, can impose a duty of care. In other words, if defendants are "innkeepers," a duty of care may be imposed. Black's Law Dictionary defines an "innkeeper" as "[s]omeone who, for compensation, keeps open a public house for the lodging and entertainment of travelers. *** Also termed *hotelkeeper*." (Emphasis in original.) Black's Law Dictionary (11th ed. 2019). Black's Law Dictionary uses the terms "innkeeper" and "hotelkeeper" interchangeably. However, it does not define "hotel." Thus, we must look elsewhere to determine what constitutes a "hotel."

¶ 27    The Innkeeper Protection Act, which, *inter alia*, shields an innkeeper from theft liability, defines a hotel as "every building or structure kept, used, maintained, advertised, and held out to the public to be a place where lodging, or lodging and food, or apartments, or suites, or other accommodations are offered for adequate pay to travelers and guests, whether transient, permanent or residential, in which 25 or more rooms are used for the lodging, or lodging and

food, or apartments, or suites, or other accommodations of such guests." 740 ILCS 90/7 (West 2020). Based on the foregoing, we cannot say that, *prima facie*, defendants fall outside the scope of innkeepers.

¶ 28    In *Cottmire*, this court considered whether permanent residence in a hotel apartment renders the resident a guest or a tenant. *Cottmire v. 181 East Lake Shore Drive Hotel Corp.*, 330 Ill. App. 549 (1947). While admittedly a different scenario, that case is instructive here. In *Cottmire*, plaintiff, a resident at a hotel, was injured when a porcelain handle in the bathroom of her hotel apartment broke. *Cottmire*, 330 Ill. App. at 551. The porcelain handle was in the bathroom prior to when she took occupancy of the apartment, and, at the time of the injury, she had lived in an apartment at the hotel for about three years, paying a fixed monthly rent. *Cottmire*, 330 Ill. App. at 551. Her apartment at the hotel consisted of a living room, dinette, kitchenette, and bathroom. *Cottmire*, 330 Ill. App. at 551. The jury found that the hotel was not liable for the resident's injuries, and plaintiff appealed. *Cottmire*, 330 Ill. App. at 551.

¶ 29    On appeal, the appellate court reversed the jury verdict, finding it appropriate to impose liability on the hotel for an area over which the resident had exclusive occupancy (the bathroom). *Cottmire*, 330 Ill. App. at 556-57. The court looked to the definition of a hotel in the Act for the Protection of Innkeepers (the predecessor to the Innkeeper Protection Act), and found that that definition was satisfied. *Cottmire*, 330 Ill. App. at 555. Moreover, the court found the length of the resident's stay irrelevant as to whether the relationship between her and the hotel should be classified as tenant-landlord or guest-innkeeper. Ultimately, the court held that the relationship between the resident and hotel was indeed guest-innkeeper. The court therefore allowed the resident, on retrial, to offer evidence showing that the hotel had knowledge of the danger that porcelain handles presented. *Cottmire*, 330 Ill. App. at 556-57.

¶ 30    Here, plaintiff was also a long-term resident. Moreover, he was injured in a common area rather than an area over which he had exclusive occupancy (as the resident in *Cottmire* had). In other words, plaintiff was injured in an area that defendants had control over. If the *Cottmire* court found a special relationship in a situation where the resident exclusively occupied an entire apartment and was injured in an area of that apartment, then we have an even stronger reason to find a special relationship in this situation, where plaintiff had exclusive occupancy over only the room he slept in and was injured in a common area outside of his sleeping room. The inquiry, however, does not end there. Plaintiff must also show that defendants had notice and knowledge of Lin's propensity for violent behavior. In line with our precedent, we believe that, at a minimum, plaintiff should be afforded another chance to allege the foregoing, if he can. This is further discussed below in the section on reasonable foreseeability.

¶ 31    Based on the foregoing, we find that, in these circumstances, there is a special relationship between plaintiff, as a renter in a rooming house who had control only over the room he slept in, and defendants, as owners of the rooming house who had control over common areas outside of renters' sleeping rooms.

¶ 32                                    B. Reasonable Foreseeability

¶ 33    Having found the existence of a special relationship between plaintiff and defendants in the case at bar, we move to the second step of the inquiry: was the attack on plaintiff reasonably foreseeable?

¶ 34    In the context of premises liability, " '[t]here is no liability for a landowner for dangerous or defective conditions on the premises in the absence of the landowner's actual or constructive knowledge.' " *Nunez v. Diaz*, 2017 IL App (1st) 170607, ¶ 37 (quoting *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033, 1038 (2000)). Under ordinary negligence standards,

"[f]oreseeability means that which is objectively reasonable to expect, not merely what might conceivably occur." (Internal quotation marks omitted.) *Hills*, 195 Ill. 2d at 238.

¶ 35    In the case at bar, there does not appear to be any allegation that even suggests that defendants had any knowledge or notice whatsoever regarding Lin's violent history (to the extent Lin had a violent history).

¶ 36    In his second amended complaint, plaintiff alleges that prior "altercations included an incident in or about 2018 in the common areas of the premises involving a knife attack on a resident." But this has nothing to do with Lin. Plaintiff's second amended complaint is devoid of any allegations that Lin himself has a history of knife violence, violence involving any weapon, or even physical violence generally. Without allegations of such a history, it is difficult to find that this claimed knife attack on plaintiff was reasonably foreseeable, as required by the applicable legal standard.

¶ 37    Plaintiff also alleges that he and other renters had complained to defendants about Lin's "aggressive behavior" and that defendants had done nothing in response. However, there is a significant difference between general "aggressive behavior" and stabbing someone repeatedly with a large knife, which is what Lin did. Without more, a general allegation of an individual's "aggressive behavior" cannot be expected to provide notice and knowledge that the individual may reasonably be expected to attack another person with a knife.

¶ 38    Based on plaintiff's allegations in his second amended complaint, we agree with the trial court's dismissal of the complaint. However, we disagree with its grant of the motion to dismiss with prejudice. If plaintiff moves the trial court to file another amended complaint that alleges negligence based on specific facts that show that defendants knew Lin had a propensity for physical violence, that complaint may withstand a motion to dismiss.

¶ 39                                    III. CONCLUSION

¶ 40            For the foregoing reasons, we affirm the trial court's order granting King's motion to

dismiss but vacate the portion of the order dismissing plaintiff's complaint with prejudice.

¶ 41            Affirmed in part and vacated in part.

***Xuedong Pan v. King*, 2022 IL App (1st) 211482**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-4061; the Hon. Margaret Ann Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | Mark S. Schaffner, of Law Offices of Mark Schaffner, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Fritz V. Wilson and Madeline J. Scott, of Best, Vanderlaan & Harrington, of Chicago, for appellees. |