2024 IL App (1st) 240899-U

SECOND DIVISION
December 24, 2024

No. 1-24-0899

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DX3 BP ASSOCIATES, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 23 L 1669 |
| | ) | |
| SUSAN SHIN and JAMES SHIN, | ) | Honorable |
| | ) | John J. Curry, Jr., |
| Defendants-Appellants. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court correctly granted summary judgment in favor of the landlord and
        against the guarantors where the guarantors signed an unconditional continuing guaranty
        to pay rent and other damages in case of the tenant's default. The circuit court did not err
        in its award of damages to the landlord.

¶ 2     DX3 BP Associates (DX3), the landlord of a commercial space, successfully sued S&B

Ltd, the tenant, for possession and money damages after failure to pay rent. S&B did not pay the

damages the court awarded DX3. DX3 then sued Susan and James Shin, who served as S&B's payment guarantors. DX3 moved for summary judgment and requested $284,412.24 in damages. The circuit court granted the motion for summary judgment and awarded all of DX3's requested damages. The Shins appeal. For the following reasons, we affirm.

¶ 3                                 BACKGROUND

¶ 4     On October 5, 2006, the original landlord (not a party in this case) of a shopping mall leased commercial space to S&B. The Shins, who owned S&B, signed that lease. The Shins also signed a personal guaranty, which provided, in relevant part:

> "The undersigned, (hereinafter called the 'Guarantor'), hereby guarantees as to the Landlord, its successors and assigns, the full and prompt payment of rent and additional rent, including, but not limited to, the Minimum Rent, Common Area Payment, Percentage Rent, Insurance Payment, Real Estate Tax Payment, utility charges, and other sums and charges payable by the tenant, its successors and assigns under the Lease,
>
> ***
>
> The Guarantor will forthwith pay such rent and additional rent to the Landlord, its successors and assigns, and any arrearage thereof, and will forthwith faithfully perform and fulfill all of such terms, covenants, conditions and provisions and will forthwith pay to the Landlord all damages that may arise in consequence of any default by the Tenant, its successors and assigns, under the Lease including, without limitation, all reasonable attorney's fees incurred by the Landlord or caused by any such default and by the enforcement of this Guaranty.
>
> ***

This Guaranty is an absolute, continuing and unconditional Guaranty of payment and or performance of suretyship.

\*\*\*

The Guaranty shall be a continuing Guaranty, and the liability of the Guarantor hereunder shall in no way be affected, modified or diminished by reason of any assignment, renewal, modification or extension of the Lease."

¶ 5    On January 25, 2012, the original landlord and S&B signed a lease renewal agreement for five years.

¶ 6    On August 29, 2016, DX3, the new landlord, and S&B signed a lease extension agreement for five years. That agreement identified DX3 as the successor-in-interest to the prior landlord that was party to the 2006 and 2012 lease agreements. On the same day, the Shins signed a reaffirmation of the October 5, 2006, guaranty.

¶ 7    On February 12, 2021, DX3 and S&B signed a lease extension agreement for two years. Again, the Shins signed a reaffirmation of the October 5, 2006, guaranty.

¶ 8    On January 2022, DX3 and S&B amended the lease agreement, and the Shins signed another reaffirmation of October 5, 2006, guaranty.

¶ 9    On June 13, 2022, DX3 sued S&B for failure to pay rent, seeking both eviction and damages. On October 26, 2023, the circuit court ordered eviction and, after a prove-up hearing on damages, entered judgment in the amount of $100,928.47 (the vast majority of which comprised unpaid rent) against S&B. S&B did not pay the judgment award, and neither did the Shins.

¶ 10    On February 15, 2023, DX3 sued the Shins for breach of the guaranty. On November 30, 2023, DX3 moved for summary judgment. DX3 requested $100,928.47 from the prior judgment, plus an additional $183,483.77, for a grand total of $284,412.24. Regarding the additional

3

$183,483.77, DX3 claimed (1) base rent of $85,153.30 for the period of time between the October 26, 2023, judgment and the date on which the lease terminated (as allowed under the lease[1]); (2) pass-through rent (common area maintenance, real estate taxes, and insurance) of $61,971.85 for the same time period; (3) late fees of $13,736.36 (as allowed under the lease[2]); (4) repair fees in the amount of $6,353.00; (5) attorney fees in the amount of $15,639.00 (as allowed under the lease[3]); and (6) costs in the amount of $579.26.

¶ 11    On March 13, 2024, the circuit court granted DX3's motion for summary judgment and awarded it $284,412.24 in damages.

¶ 12    The Shins appeal.

¶ 13                              ANALYSIS

¶ 14    On appeal, the Shins argue that (1) the lease and guaranty paperwork was not sufficiently specific to hold the Shins personally liable to DX3, and (2) even if the Shins are personally liable to DX3, the amount the circuit court awarded DX3 was incorrect.

¶ 15    The Shins fail to identify the applicable standard of review on appeal. Illinois Supreme Court Rule 341(h)(3) requires the appellant to include a "concise statement of the applicable standard of review for each issue, with citation to authority, either in the discussion of the issue in the argument or under a separate heading placed before the discussion in the argument." Ill. S. Ct. R. 341(h)(3) (eff. Oct. 1, 2020). The standard of review appears nowhere in the Shins' brief. Our supreme court rules are not mere suggestions; they have the force of law, and the parties must

---

[1] The lease allowed DX3 to terminate S&B's possession of the leased premises without terminating the lease. Additionally, the lease did not require DX3 to relet the premises to another tenant. The lease provided that the damages are "the amount of rental reserved in [the lease] for the balance of the lease term."

[2] The lease allowed DX3 to impose a 10% interest on unpaid rent.

[3] The lease and guaranty both allowed the prevailing party to recover costs, expenses, and attorney fees in any action brought under the terms of the lease or guaranty.

abide by them. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18. We have the inherent authority to dismiss an appeal where the appellant's brief fails to comply with supreme court rules. *North Community Bank v. 17011 South Park Avenue, LLC*, 2015 IL App (1st) 133672, ¶ 14. However, we recognize that dismissing an appeal or striking a brief is a harsh sanction. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Though the deficiencies of the Shins' brief needlessly complicate our review, they do not frustrate it completely, so we will supply the standard of review and consider the merits.

¶ 16   We review summary judgment rulings *de novo*. *Habdab, LLC v. County of Lake*, 2024 IL 130323, ¶ 18. *De novo* review means we engage in the same analysis as the circuit court. *Xuedong Pan v. King*, 2022 IL App (1st) 211482, ¶ 16.

¶ 17   Because a guaranty is a contract, we interpret it under the principles of contract interpretation. *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 118 (2001). We construe any ambiguities in favor of the guarantor, but only where doubt arises as to the guaranty language. *Id.* at 118-19. Where the terms of the guaranty are clear and unambiguous, we give them effect as written. *Id.* at 119. Even if a landlord fails to obtain guaranty reaffirmation from a commercial tenant when modifying the lease, the tenant's guaranty continues if the guaranty language indicates that it is absolute, unconditional, and continuing. *Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 376 Ill. App. 3d 599, 609-10 (2007).

¶ 18   We consider first whether the guaranty the Shins signed and reaffirmed on multiple occasions was sufficient to hold them personally liable to DX3 for damages arising from S&B's default.

¶ 19    The Shins argue that the original lease guaranty "makes clear that the [Shins] are not liable to any new Landlord for damages to the Unit after the current Landlord has sold or assigned its interest in this property."

¶ 20    The Shins offer no support for their contention that their liability ends after the original landlord has sold or assigned its interest in the property. Indeed, they cannot find such support. The plain language of the October 5, 2006, guaranty states that the Shins "guarantee as to the Landlord, **its successors and assigns**, the full and prompt payment of rent and additional rent \*\*\*." (Emphasis added.) By the plain language of the guaranty, the Shins guaranteed payment to the original landlord as well as that landlord's successors and assigns. Additionally, the Shins reaffirmed that same guaranty on multiple occasions, starting with the first time S&B entered into a lease agreement with the new landlord, DX3. That signed lease agreement identified DX3 as the original landlord's successor-in-interest, so any argument that the Shins were unaware of the new landlord is without merit. Given the foregoing, we hold the Shins' guaranty extends to DX3.

¶ 21    The Shins argue that even if they are personally liable to DX3, they are not liable for the additional $183,483.77 that the circuit court awarded against them as guarantors. The argument is based on the Shins' interpretation of the following language from the guaranty:

> "The Guarantor will forthwith pay such rent and additional rent to the Landlord, its successors and assigns, and any arrearage thereof, and will forthwith faithfully perform and fulfill all of such terms, covenants, conditions and provisions and will forthwith pay to the Landlord all damages that may arise in consequence of any default by the Tenant, its successors and assigns, under the Lease including, without limitation, all reasonable attorney's fees incurred by the Landlord or caused by any such default and by the enforcement of this Guaranty."

¶ 22    In the quoted text, the first time "Landlord" appears, it is followed by "its successors and assigns." The second time "Landlord" appears, it is not followed by "its successors and assigns." Based on this, the Shins argue that only the original landlord may collect "all damages that may arise in consequence of any default by the Tenant ***." That is, DX3, as a successor landlord, may collect rent, additional rent, and arrearage thereof, but not other damages. We find this interpretation unpersuasive.

¶ 23    Under that interpretation, the Shins would be liable to DX3 for S&B's unpaid rent, but liable to the original landlord for all other damages related to the enforcement of the guaranty. That makes no sense. There is no reason why an original landlord that has assigned its rights to another party should be awarded damages from a subsequent action it has nothing to do with, *i.e.*, DX3's enforcement of the continuing guaranty. It would lead to an absurd result to interpret the guaranty in this manner, and we decline to do so. See *Suburban Auto Rebuilders, Inc. v. Associated tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009) ("Courts will construe a contract reasonably to avoid absurd results.") (citing *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1036 (2003)). The Shins have not cited a single case to support this interpretation. The reasonable and logical interpretation is that DX3, as a successor landlord, may collect "all damages that may arise in consequence of any default" by S&B from the Shins as guarantors. Accordingly, the circuit court correctly awarded the additional $183,483.77 to DX3.

¶ 24                              CONCLUSION

¶ 25    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26    Affirmed.